2020 IL App (1st) 191212

FIRST DISTRICT
SIXTH DIVISION
November 20, 2020

No. 1-19-1212

| | | |
|---|---|---|
| GOWHAR KHAN, M.D., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 18 CH 2921 |
| THE DEPARTMENT OF HEALTHCARE AND FAMILY | ) | |
| SERVICES and FELICIA F. NORWOOD, Director of | ) | |
| Healthcare and Family Services, | ) | Honorable |
| | ) | Moshe Jacobius, |
| Defendants-Appellees. | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Griffin concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Gowhar Khan, M.D., appeals from an order of the circuit court affirming the decision of defendant Felicia Norwood, director of defendant Department of Healthcare and Family Services (Department), following an evidentiary hearing by a Department administrative law judge (Judge), to deny plaintiff's application for reinstatement from suspension as a Medicaid provider and to recover and withhold payment for services plaintiff rendered during his suspension. In 2014, defendants had suspended plaintiff for one year, a decision this court affirmed. *Khan v. Department of Healthcare & Family Services*, 2016 IL App (1st) 143908.

¶ 2     On appeal, plaintiff contends that the Director's decision was erroneous because (1) a suspension cannot last more than a year, (2) certain evidence was erroneously admitted as business records in the Department hearing, (3) suspension of a physician as a Medicaid vendor does not

prohibit the physician from treating patients who are on Medicaid, and (4) plaintiff could not prevent his Medicaid patients from filling prescriptions. For the reasons stated below, we affirm the Director's decision.

¶ 3                                         I. JURISDICTION

¶ 4      Plaintiff applied to the Department for reinstatement as a Medicaid vendor, which the Director denied on February 20, 2018, pursuant to the Judge's recommended decision following a 2017 hearing. Plaintiff filed a complaint for administrative review in the circuit court on March 6, 2018. 735 ILCS 5/3-103 (West 2018) (complaint for administrative review to be filed within 35 days of service of the administrative decision). The circuit court affirmed the Director's decision in January 2019 and denied plaintiff's motion to reconsider on May 30, 2019. Plaintiff filed his notice of appeal on June 14, 2019. 735 ILCS 5/3-112 (West 2018) (circuit court judgment in administrative review appealable "as in other civil cases"). Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017) governing appeals in civil cases.

¶ 5                                         II. BACKGROUND

¶ 6      On January 31, 2014, the Director adopted a May 2013 recommended decision and suspended plaintiff from the Medicaid program for one year for providing medical care in the Medicaid program that was of grossly inferior quality, placed patients at risk of harm, and was in excess of patients' needs. *Khan*, 2016 IL App (1st) 143908, ¶¶ 4-5. The recommended decision recommended plaintiff's suspension for one year, pursuant to section 140.17 of the Social Services title of the Illinois Administrative Code. 89 Ill. Adm. Code 140.17 (1992). Neither it nor the Director's decision adopting it directed or required plaintiff to correct the deficiencies underlying his suspension. We affirmed. *Khan*, 2016 IL App (1st) 143908, ¶¶ 1, 35.

¶ 7      In January 2015, plaintiff applied for reinstatement as a Medicaid provider.

¶ 8    In June 2015, the Department gave plaintiff notice of its intent to deny his application and seek $77,870 in civil penalties. The Department alleged that he, while suspended as a Medicaid provider, ordered goods or services for Medicaid patients "for which payment will be, has been made or has been rejected in whole or in part by the Department," in violation of 89 Ill. Adm. Code 140.32(a)(1) (2013). "In addition to billing the Department for services, [plaintiff] prescribed drugs which the Department made payments for pharmacy claims during" his suspension. "The total number of prescriptions the Department paid during the period of suspension was 217 for 62 recipients in the amount of $25,956.80," with the civil penalty being three times that amount. The Department also alleged that plaintiff

> "failed to provide information to establish that he could reasonably be expected to meet the written requirements of the Department, including those set forth in the Program Handbooks and the Department's manuals, bulletins and releases or to establish that [he] is fit to participate in the Program or that, after reviewing the activities which served as the basis for the earlier suspension and all previous actions and conduct involving [plaintiff], the application should not be approved,"

said activities including the aforesaid section 140.32 violation.

¶ 9    Also in June 2015, plaintiff requested a hearing on the allegations.

¶ 10    The Department amended its notice in September 2015, adding an allegation that plaintiff contracted with a particular managed care organization (Organization) to provide services to Medicaid patients in January 2014, after an administrative law judge recommended his suspension but before the Director adopted the recommendation and suspended him, and upon his representations to the Organization that he was a Medicaid vendor in good standing and had not been investigated or disciplined by any government agency. The Department also alleged that plaintiff provided services or ordered goods and services for the Organization's patients while he

was suspended. A copy of plaintiff's agreement with the Organization was attached, dated January 2, 2014, signed by plaintiff on February 1, 2014, and accepted by the Organization in March 2014.

¶ 11    Just before the administrative hearing commenced in October 2017, the Department withdrew its prayer for civil monetary penalties.

¶ 12                                A. Department Hearing

¶ 13    At the hearing, Department employee Jeremy McClung, a computer analyst with the Department's Inspector General office, testified that he worked with the data that the Department retains in the course of administering the Medicaid program, including "claims" or billing electronically submitted by Medicaid providers for services performed or drugs prescribed. The Department keeps claims data in a standard computer system, with each claim assigned a number representing in part the date the claim was submitted, and it does so in the ordinary course of its business overseeing the Medicaid program including its obligation to review the payments it made to Medicaid providers for services rendered to Medicaid patients.

¶ 14    Regarding plaintiff, McClung was asked for the records of his Medicaid claims after the date his suspension took effect, except for claims where Medicare was the primary payer rather than Medicaid. McClung then produced two reports of the claims or bills under plaintiff's provider number, one of all claims held by the Department and the other of all claims rejected by the Department. For each such claim, the two reports reflected in part plaintiff's provider number, which Medicaid patient was covered, on what date service was provided, what service was provided, the amount of payment sought, and by whom it was sought. Some claims were on both reports because they were rejected, then corrective action was taken—that is, the Department told the claimant why it rejected the claim, and the claimant provided more information—and then the Department held the claim. McClung also produced two reports listing all prescriptions that plaintiff wrote for Medicaid patients and all such prescriptions where the Department rejected the

pharmacy's claim or bill. McClung produced all four reports in the ordinary course of the Department's business using standard computer equipment, and each report was an accurate reflection of the data entered into Department records.

¶ 15    On cross-examination, McClung testified that he had no input on Department decisions to pay or reject claims and that he did not contact any of the providers for the claims at issue. Though he created the reports in 2017 based on data going back to 2014, the computer had not changed. He denied that the Department computer system was obsolete, as it was "constantly updated." McClung based his computer queries on service dates after plaintiff's suspension date, the service date for a prescription being the date it was filled. While he could have queried based on the dates prescriptions were written, he did not because "we base it off service date." He acknowledged that, if a prescription authorizes refills, Department records would show the original prescription date and that plaintiff may have written a prescription months before a pharmacy filled it.

¶ 16    On redirect examination, McClung testified that the data for a claim would change if the processing or disposition of the claim itself changed, as when a claim is rejected or resubmitted.

¶ 17    The Department's exhibits—the reports produced by McClung—were admitted over plaintiff's objections of insufficient foundation of trustworthiness. Plaintiff argued regarding the prescription reports that the pharmacists did not testify to the accuracy of the information. Exhibit 1 was "Held Bills for" plaintiff, exhibit 2 was "Other Rejected Bills for" plaintiff, exhibit 3 was "Paid Pharmacy Bills for" plaintiff, and exhibit 4 was "Rejected Pharmacy Bills for" plaintiff.

¶ 18    Plaintiff testified that he was still a licensed physician though suspended from the Medicaid program. He learned of his suspension on February 4, 2014, in an e-mail message from his counsel, and neither he nor anyone in his office submitted Medicaid bills thereafter. Plaintiff opined that he has a moral and ethical duty to treat his patients if they seek treatment and that he cannot simply

ignore a patient. He did not direct his patients to any pharmacy, bill for pharmacy services, or control pharmacy billing.

¶ 19 On cross-examination, plaintiff reiterated that he did not submit any bills to the Department while he was suspended. He acknowledged that he could refer patients to other physicians instead of abandoning them but explained that it is difficult to find Medicaid vendors to accept referrals. He told Medicaid patients not enrolled in a managed care organization that he could not treat them. He had contracts with managed care organizations predating his suspension, so he was required to treat those patients, and he served them because he was not directed otherwise by the organizations.

¶ 20 B. Judge's Recommendation

¶ 21 The Judge issued his recommended decision in December 2017. After reciting the procedural history, the Judge found:

"[T]he issues presented are 1) whether the Department properly denied [plaintiff's] reapplication to the Program because he provided services to Program recipients while he was suspended; 2) whether the Department is entitled to recoup money paid for services rendered by [plaintiff] to Program recipients after January 31, 2014, the date on which [he] was suspended; and 3) whether [plaintiff] should be excluded from the Program."

¶ 22 After reciting the relevant Department rules and the hearing evidence, the Judge found that plaintiff "provided services and ordered goods for the benefit of Program recipients after January 31, 2014," when he was suspended and thereby "violated the terms of his suspension under Section 140.32," which "would warrant termination from the Program." The Judge found that the "Department paid $5,162.25 for prescriptions that [plaintiff] ordered while suspended" and "withheld $30,125 for bills submitted under [plaintiff's] provider number while suspended." The Judge recited that the "Department may deny an application to participate in the Program if the applicant violated Section 140.32" or "engaged in actions that would warrant termination from the

Program." The Judge addressed the issues presented: "The record establishes that the Department properly denied [plaintiff's] application and *** is entitled to recoup overpayments from [him]. The record does not establish that [he] should be excluded from the Program, however."

¶ 23 The Judge rejected plaintiff's claim that the Department's "exhibits were improperly admitted because they rely on the business records of other entities" with an insufficient foundation for their accuracy; that is, that the business records of Medicaid payees "do not become Department business records merely because the records have been transferred to the Department." Plaintiff's "suppositions that computers and technology are not inherently reliable" could not by themselves overcome the Department rule that its computer records accurately reflect the Department's payments and the basis for payment unless shown otherwise. 89 Ill. Adm. Code 104.255 (1981). Moreover, even absent that rule, the Judge found plaintiff's proposition unsupported because the Department did not offer into evidence any records that had not come from the Department's records kept in the ordinary course of its business.

¶ 24 The Judge also rejected plaintiff's assertion that, under section 140.19(d) of the Social Services title of the Illinois Administrative Code (89 Ill. Adm. Code 140.19(d) (2013)), he must "be reenrolled unless there is a finding that he has not corrected the deficiencies that caused his suspension," which was providing inferior care. While the Department must adhere to its rules, another rule provided that an application to be a Medicaid provider can be rejected if the applicant engaged in activity sufficient to be terminated, suspended, or excluded as a provider. 89 Ill. Adm. Code 140.14(a) (2013). The Judge found the latter rule applicable beyond an initial or original application. Because plaintiff admitted to performing services for Medicaid patients under his contract with the Organization while suspended and because Department records showed that he ordered prescriptions during his suspension, the record showed that he violated Department rules

and the provisions of his suspension, so that the Department had sufficient grounds to deny his application.

¶ 25     The Judge rejected plaintiff's claim that, while claims were submitted under his provider number while he was suspended, he did not cause the Department to be billed. "[T]he submitted claims in this case must have been certified either by [plaintiff], his employee whom he authorized to submit such claims, or an alternate payee, the actions for whom [plaintiff] is jointly and severally liable." See 89 Ill. Adm. Code 140.24(e) (2014). The Department records in its exhibits created a rebuttable presumption that the Department paid claims as reflected in those records, and plaintiff did not rebut the presumption. Omitting $375 paid on a claim submitted on the day of plaintiff's suspension, the exhibits showed $30,125 paid, and the Judge found that the Department properly withheld that sum. Of the 217 prescriptions at issue, the Judge found that 126 prescriptions were written after plaintiff's suspension and that the Department paid $5162.25 on those prescriptions, so it should recover that sum.

¶ 26     Lastly, the Judge found it unnecessary to exclude plaintiff from the Medicaid program because denying his application would have the same effect of barring him from reapplying for a year. 89 Ill. Adm. Code 140.19 (2013).

¶ 27                                   C. Director's Decision

¶ 28     Plaintiff filed exceptions to the Judge's recommended decision. He argued that the Department was disregarding its rule that suspensions are for only a year. He also argued that the Department hearing was unfair because Department rules waived evidentiary requirements for Department records only. Relatedly, he argued that the admission of Department records was erroneous because the claims or bills were submitted by Medicaid providers "and merely stored by the Department" and because computers are fundamentally unreliable for storing information. He argued that he did not bill the Department but that claims were made by pharmacies and

managed care organizations. "It was not proved that Dr. Khan designated any pharmacy or MCO as an alternative payee" so that the Judge's reference to alternative payees and joint liability was unsupported by evidence. He argued that the Department should not have considered claims after he was suspended on January 31. 2014, but before he had notice of the suspension on February 4. Lastly, plaintiff argued that the Department was misinterpreting the term "vendor" in its rules and that "he should not have to submit an application to become a vendor" when he was suspended for a year from January 31, 2014.

¶ 29    The Department filed a response to plaintiff's exceptions. It argued that the Judge was not disregarding a Department rule on one-year suspensions but applying other rules: (1) that an application to be a Medicaid vendor can be denied for activity that would be grounds for termination, suspension, or exclusion and (2) that a suspended vendor cannot provide services, or order goods and services, for a Medicaid patient nor be an independent contractor for a vendor. The first of those rules applied to applications other than initial applications because "[t]he Department may deny an application to participate in the [Medicaid] Program if the vendor has engaged in activities which constitute grounds for termination, suspension or exclusion." 89 Ill. Adm. Code 140.14(a) (2013). Relatedly, the Department argued that the Judge properly recited and applied the definition of a vendor. The Department argued that the hearing was not unfair because the Department rule on admitting Department records has foundational requirements that the Department met here and created a rebuttable presumption that plaintiff did not rebut. The Department also argued that the Judge did not err in finding that plaintiff performed services for Medicaid patients while suspended, because (1) all claims must be certified by a vendor, trusted employee, or specifically designated alternate payee, with the vendor and alternate payee being jointly and severally liable (89 Ill. Adm. Code 140.20(b) (2018); 89 Ill. Adm. Code 140.24(e) (2014)) and (2) plaintiff did not rebut the presumption that the Department paid claims as reflected

in its records. The Department argued that there was no authority for plaintiff's claim that he should not be responsible for claims after his suspension until he had notice of his suspension.

¶ 30    Plaintiff replied in support of his exceptions. He argued that the Judge did not apply the rule limiting suspensions to one year because he did not cite or mention it and that any conflict of rules should result in the more specific rule being applied, which he argued was the rule providing for the reinstatement of a suspended vendor unless the vendor does not correct the deficiencies underlying the suspension. Lastly, plaintiff argued that the Department does not generate claims or bills and thus did not generate the records at issue.

¶ 31    The Director sent plaintiff's counsel a letter on February 20, 2018, stating that she reviewed the Judge's recommended decision, plaintiff's exceptions, and the response and reply. The Director found the Judge's recommendation to be warranted and formally adopted it as the final decision of herself and the Department. In addition to denying plaintiff's application, "[t]his means the Department is entitled to recover the sum of $5,162.25 from your client and withhold $30,125 in payments to your client."

¶ 32                    D. Circuit Court Review

¶ 33    Plaintiff filed a complaint for administrative review in the circuit court in March 2018. He alleged that the Director "failed to properly apply the law and in so doing misinterpreted the applicable rules" including 89 Ill. Adm. Code 140.17 (1992). He also alleged that the Department "evidentiary hearing was improperly and unfairly conducted due to the admission of exhibits, including but not limited to the admission into evidence of documents that were submitted by other vendors and not prepared by the" Department. Lastly, he alleged that the Director's decision was contrary to the manifest weight of the evidence and was arbitrary, capricious, and contrary to law, "including the fact that the Department is seeking to recoup from Dr. Khan funds paid to

pharmacies for medications actually provided to patients when Dr. Khan did not receive any portion of the payment for the medications."

¶ 34 The Department and Director appeared in the circuit court and filed the Department record regarding plaintiff's application.

¶ 35 Plaintiff filed a memorandum of law in support of his complaint, reiterating his arguments from his exceptions to the Judge's recommended decision.

¶ 36 Defendants filed a response in support of the Director's decision, reiterating the Department's arguments below and arguing that plaintiff "admitted to seeing patients and writing prescription[s] during his suspension."

¶ 37 Plaintiff filed a reply, arguing that the pharmacies who submitted claims were not his alternative payees and reiterating his arguments that (1) claims are not admissible as Department records because they are generated by vendors rather than the Department and (2) the Department was misapplying the term "vendor."

¶ 38 The circuit court issued its order affirming the Director's decision in January 2019. After describing the Department proceedings, the court addressed plaintiff's challenges in his administrative complaint.

¶ 39 As to plaintiff's claim that he had to be reinstated after a year's suspension unless he did not remedy the issues underlying his suspension, which were not the grounds for the Director's decision at issue, defendants argued that the Department rules provide for suspension or revocation of a vendor for not complying with the conditions of suspension including being a vendor, ordering goods or services from a vendor that the Department will pay for, and being an independent contractor for a vendor. The Judge had agreed with the Department, and the circuit court similarly found the Department's interpretation of its rules "to be the more logical and comprehensive one." The rule on one-year suspensions does not require the Department to disregard new violations of

its rules merely because the original grounds for suspension do not persist, the court found. The court found no conflict between rules, as plaintiff argued, but merely different rules applicable under different circumstances.

> "Under Dr. Khan's narrow interpretation of Section 19, the Department would only have the authority to discipline vendors who commit the same violation again and again. For vendors such as Dr. Khan, who commit multiple, varying violations, the Department would be forced to reinstate them at the end of their initial one-year suspension and could never seek to have them terminated or suspended for their new violation. This is clearly not what the Department intended when it promulgated Section 19 and Section 14."

¶ 40     While plaintiff argued that the Department and Judge misapplied the term "vendor," the court found plaintiff's argument that a suspended vendor is not a vendor unsupported by the rules. Firstly, "[i]f Dr. Khan is correct that he was not a vendor, then Section 19 does not apply to him" as plaintiff argued on the previous point. Also, after reciting various rules, the court found,

> "Read together, these regulations show the Department has promulgated separate sets of requirements for enrollment and participation. An enrolled provider has a valid license and has submitted all necessary paperwork. A participating provider has a valid license, has submitted all necessary paperwork, and has also agreed to certain conditions on the provider's provision of goods and services to Medicaid patients."

The court found that the evidence established that plaintiff qualified as a vendor, as he had a valid medical license and was by his own admission treating Medicaid patients during his suspension. Lastly, the court rejected plaintiff's argument that suspended vendors cannot be vendors because they would inherently violate their suspensions, as a suspended vendor would violate Department rules not by status but by providing medical services or goods to Medicaid patients during suspension.

¶ 41 As to plaintiff's challenge to the Judge's admission of Department records as hearing exhibits, the court found that Department employee McClung generated the exhibits from Department records in the ordinary course of Department business. While claims are submitted by vendors, they are processed by the Department pursuant to Medicaid statutes and regulations, with the Department then recording its disposition of the claims in its records. "McClung's reports are not records from other entities that the Department merely stores. They are records of transactions the Department either agrees or refuses to complete." The court rejected the argument that the computer records were not of proven accuracy and found it to be undermined by plaintiff's admission that he treated and wrote prescriptions for Medicaid patients during his suspension. Lastly, the Department rule on admitting Department records does not unduly elevate Department records over other records or exhibits because it merely creates a rebuttable presumption, which plaintiff did not successfully rebut.

¶ 42 As to plaintiff's argument that he did not submit any bills or claims to the Department or receive payment on claims, during his suspension, the court noted Department rules that a claim must be signed by the service provider, an employee, or designated alternate payee and that the Department is not liable to pay claims that do not comply, as such claims are ineligible for payment. The court found that, when plaintiff writes a prescription, a pharmacy that fills it acts under his authority and carries out his directive. Moreover, when a pharmacy fills a prescription for a Medicaid patient that the physician was not authorized to write and the Department pays the prescription, it has spent taxpayer funds it was not permitted to pay. "The onus should be borne by Dr. Khan, who knew or certainly should have known he was not authorized to write prescriptions when he was not allowed to be a Medicaid provider. Unless the pharmacy was informed of such fact, there is a minuscule probability it would be privy to such information." The court found that the Judge "was correct to assess the sum of $5,162.25 against Dr. Khan. But for Dr. Khan's

prescription, these moneys would have never been erroneously paid by the [Department] and Dr. Khan rightfully bears the responsibility of restoring these funds to the [Department] and to the taxpayers." The court also found that this recovery of payments from plaintiff did not take his private property. The court rejected plaintiff's argument that he should not be liable for prescriptions written before he had notice of his suspension on February 4, 2014, noting a Department rule that a decision is deemed served when mailed and the evidence that the Director's decision was dated and mailed January 31, 2014.

¶ 43    Lastly, plaintiff argued that he should not be responsible for claims on prescriptions he wrote before his suspension. The court rejected this argument, finding that plaintiff:

"need only have consulted his own records to determine which prescriptions to Medicaid patients with refills were still outstanding when he received notice of his suspension. [His] failure to consult these records and his failure to advise his patients that he was no longer allowed to order goods for them are not excuses for the fact that certain patients continued to refill prescriptions that could no longer he billed to Medicaid after Dr. Khan was suspended."

¶ 44                              E. Reconsideration

¶ 45    Plaintiff filed a motion to reconsider the court's January 2019 order later that same month. Plaintiff argued that the Director's decision was contrary to the Department rule that a vendor must be reinstated after a year's suspension unless they have not remedied the violations that caused the suspension. The Department could separately charge any subsequent violations of its rules rather than denying reinstatement and, indeed, had no authority to deny reinstatement except for not remedying the grounds for suspension. While the court noted that plaintiff did not offer records to counter the Department's allegations or to show specific inaccuracy within McClung's reports, plaintiff argued that the accuracy of those reports was not proven. Also, a claim presented sometime after a prescription was filled is not a contemporaneous note of a transaction for

business-record purposes, plaintiff argued. Plaintiff argued that his suspension as a Medicaid provider did not bar him from treating Medicaid patients, noting the evidence of crossover patients covered by both Medicaid and Medicare. He argued that he did not admit to treating Medicaid patients, as the court found, because he "would not know if services he rendered without billing would result in other providers billing the Medicaid Program for his prescriptions or services." Plaintiff speculated that "the patient could have paid out-of-pocket for the prescription because the medication may not have been covered by the Medicaid program" or "the payment from the medication could have come from another program of insurance, such as Medicare." Plaintiff did not bill for pharmacies or supervise their billing, nor were they his alternate payees, and the Department could seek recoupment of improper payments to pharmacies from the pharmacies. He could not prevent his patients from filling his prescriptions, nor would he know where they were having their prescriptions filled to instruct the pharmacies not to fill them. He could not abandon his patients, he could not know of the need to transfer or refer his patients until he knew he was suspended, and a referral or transfer would have to be to another Medicaid provider so as to not impact his patients. Plaintiff argued that the mailbox rule for the Director's decision was applicable to filing an administrative review action, not to having actual notice of the decision.

¶ 46    Defendants filed a response to the motion to reconsider, arguing that (1) the Department was not required to reinstate plaintiff after a year's suspension, (2) the Judge properly admitted Department records as hearing evidence, (3) plaintiff was properly held responsible for claims to the Department during his suspension, as he saw Medicaid patients while suspended but was prohibited from providing services or ordering goods for Medicaid patients during his suspension that would be paid in part or whole by the Department, and the Department generally does not pay pharmacies for prescriptions written by suspended physicians, and (4) the mailbox rule applies to the service of administrative decisions.

¶ 47    Plaintiff filed a reply in support of his motion to reconsider, reiterating arguments from his motion.

¶ 48    On May 30, 2019, the court issued its order denying reconsideration of its January 2019 order. After reciting the procedural history including plaintiff's reconsideration arguments, the court reiterated its analysis from the January 2019 order that the Director's decision properly denied plaintiff's application for reinstatement. The court also found that doing so was not an extension of the 2014 suspension but separate penalties for separate violations. Also, the Director's decision was not contrary to or in excess of the Department's statutory authority, the court found. As to the admission of exhibits, plaintiff's argument rested on the proposition that the Department failed to prove their accuracy, a proposition the court rejected in detail. Also, Department records were contemporaneous notes of vendors submitting claims and the Department disposing of them.

¶ 49    As to holding plaintiff liable for pharmacies' claims, "[i]t is not speculative to find Dr. Khan should have exercised discretion when accepting patients," and the court was "unpersuaded that Dr. Khan was powerless to prevent prescriptions from being billed to Medicaid during his suspension." Also, the Department is authorized by statute to recover wrongfully paid claims, and the "fact that these payments were made to the pharmacies does not change the fact that they were made as a result of Dr. Khan improperly writing prescriptions." The court "did not find that Dr. Khan was required to force his patients to [forgo] their medication" but "merely found Dr. Khan took no steps to transition his patients' prescriptions to another provider who was authorized to order goods through Medicaid" and that he was aware of his recommended suspension before it became a decision on January 31, 2014. Lastly, both statute (735 ILCS 5/3-103 (West 2018)) and Department rule provide for a mailbox rule for service of administrative decisions and do not provide that a decision is served when a party receives it. This appeal timely followed.

¶ 50                                    III. ANALYSIS

¶ 51    On appeal, plaintiff contends that the Director's order was erroneous because (1) a suspension cannot last more than a year under the Department's rules, (2) the Department's hearing exhibits were erroneously admitted as business records, (3) suspension of a physician as a Medicaid vendor does not prohibit the physician from treating patients who are on Medicaid, and (4) plaintiff could not prevent his Medicaid patients from filling prescriptions.

¶ 52    Defendants respond that the Director properly denied the application, plaintiff was required to apply for reinstatement and the Director had the authority to deny that application, plaintiff's interpretation of the Department's rules was unsupported, the Judge did not abuse his discretion in admitting evidence, and the Director did not clearly err in determining that the Department could withhold payments to plaintiff for services rendered during his suspension.

¶ 53    The Illinois statute governing Medicaid, article V of the Public Aid Code (305 ILCS 5/5-1 *et seq.* (West 2018)), provides in relevant part:

> "Applicants and recipients shall be entitled to free choice of those qualified practitioners *** and other dispensers of medical services meeting the requirements and complying with the rules and regulations of the Illinois Department. However, the Director of Healthcare and Family Services may, after providing reasonable notice and opportunity for hearing, deny, suspend or terminate any otherwise qualified person, firm, corporation, association, agency, institution, or other legal entity, from participation as a vendor of goods or services under [Medicaid] if the Director finds such vendor of medical services in violation of this Act or the policy or rules and regulations issued pursuant to this Act." 305 ILCS 5/5-9 (West 2018).

¶ 54    The Director's decision regarding Medicaid vendor eligibility is reviewable, first by the circuit court, under the Administrative Review Law. 305 ILCS 5/12-4.25(G) (West 2018); 735

ILCS 5/3-101 *et seq.* (West 2018). We review the administrative agency's decision, not the circuit court's decision. *Senno v. Department of Healthcare & Family Services*, 2015 IL App (1st) 132837, ¶ 33. Judicial review of an administrative decision extends to all questions of law and fact presented by the entire record, with the findings and conclusions of the administrative agency considered *prima facie* true and correct. 735 ILCS 5/3-110 (West 2018).

¶ 55    The standard of review depends on whether the issue presented is a question of fact, question of law, or mixed question of law and fact. *Senno*, 2015 IL App (1st) 132837, ¶¶ 33-34. On a question of fact, including credibility determinations, we reverse only when the findings were against the manifest weight of the evidence; that is, if the opposite conclusion is clearly evident. *Id.* ¶¶ 34, 40. A mixed question of law and fact concerns the legal effect of a given set of facts when the historical facts are admitted or established, the legal rule is undisputed, and the issue is whether the facts satisfy the applicable rule. *Id.* ¶ 34. A mixed question of law and fact is reversed only if the administrative decision was clearly erroneous; that is, if we have a definite and firm conviction that a mistake was made. *Id.* ¶¶ 34, 42. A legal question is reviewed *de novo*. *Id.* ¶ 34.

¶ 56                                A. Denial of Reinstatement

¶ 57    Plaintiff first contends that the Director's decision was erroneous because a suspension cannot last more than a year under the Department's rules, noting that a government agency like the Department cannot exceed its authority.

¶ 58    Under the Public Aid Code, the "Department may deny, suspend, or terminate the eligibility of any person [or entity] to participate as a vendor of goods or services to recipients under [Medicaid], or may exclude any such person or entity from participation as such a vendor, and may deny, suspend, or recover payments, if after reasonable notice and opportunity for a hearing the" Department makes certain findings, including that the "vendor is not complying with the Department's policy or rules and regulations." 305 ILCS 5/12-4.25(A)(a) (West 2018).

¶ 59    When a vendor has been suspended from participation in Medicaid,

"the Director may require that such vendor correct any deficiencies which served as the basis for the suspension. The Director shall specify in the suspension order a specific period of time, which shall not exceed one year from the date of the order, during which a suspended vendor shall not be eligible to participate. At the conclusion of the period of suspension the Director shall reinstate such vendor, unless he finds that such vendor has not corrected deficiencies upon which the suspension was based." 305 ILCS 5/12-4.25(D) (West 2018).

A terminated, suspended, or excluded "vendor shall be barred from participation for at least one year." *Id.*

"At the end of one year a vendor who has been terminated, suspended, or excluded may apply for reinstatement to the program. Upon proper application to be reinstated such vendor may be deemed eligible by the Director providing that such vendor meets the requirements for eligibility under this Code. If such vendor is deemed not eligible for reinstatement, he shall be barred from again applying for reinstatement for one year from the date his application for reinstatement is denied." *Id.*

¶ 60    Statutory construction is a question of law reviewed *de novo*. *Senno*, 2015 IL App (1st) 132837, ¶ 37. While statutory construction is usually not deferential, we give substantial weight and deference to the interpretation of the agency charged with administering a statute, recognizing the agency's expertise, experience, and role as an informed source of legislative intent. *Id.* That said, the agency's interpretation is not binding, and we may reject an interpretation that is unreasonable or erroneous. *Id.*

¶ 61    Here, section 12-4.25(D) of the Public Aid Code has two paragraphs addressing the duration of suspensions. One provides for a suspension that "shall *not exceed* one year," under

which the Director may require that the vendor correct any deficiencies that served as the basis for the suspension and "*shall* reinstate" the vendor after the period expires unless the Director finds that the vendor has not corrected the deficiencies underlying the suspension. (Emphases added.) 305 ILCS 5/12-4.25(D) (West 2018). The other paragraph provides that a suspended "vendor shall be barred from participation for *at least* one year" and that after a year the vendor "may *apply* for reinstatement to the program" and "*may* be deemed eligible by the Director providing that such vendor meets the requirements for eligibility," whereas if the "vendor is deemed not eligible for reinstatement, he *shall* be barred from again applying for reinstatement for one year from the date his application for reinstatement is denied." (Emphasis added.) *Id.* For clarity and brevity, we shall refer to these unnumbered paragraphs as the "not exceed one year" and "at least one year," paragraphs respectively.

¶ 62     The Department implemented these statutory provisions in two rules. Rule 17, as we shall call it, provides:

> "In actions based on Section 140.16 in which the Notice states an intent to terminate, the final administrative decision may result in suspension for a specific time, which shall not exceed one year from the time of the final administrative decision, rather than termination, when the Department determines that:
>
>> a) the seriousness and extent of the violations do not warrant termination; and
>>
>> b) the vendor had no prior history of violations of the Medical Assistance Program; and
>>
>> c) the lesser sanction of suspension will be sufficient to remedy the problem created by the vendor's violations." 89 Ill. Adm. Code 140.17 (1992).

Rule 17 has no parallel provision to the "not exceed one year" paragraph concerning correcting deficiencies, either as a requirement of the suspension or a condition for reinstatement. The other rule, which we shall refer to as Rule 19, provides in relevant part:

"a) A vendor that has been terminated, suspended or excluded from the Medical Assistance Program may not apply to participate for at least one year after the date of the final administrative decision terminating, suspending or excluding eligibility ***.

* * *

b) After one year, a vendor who has been terminated, suspended or excluded *** may apply for reinstatement to the Medical Assistance Program. If a vendor's application for reinstatement is denied by the Department, he or she shall be barred from again applying for reinstatement for one year after the date of the final administrative decision denying his or her application for reinstatement.

***

d) At the end of a period of suspension, a vendor that has been suspended from the Medical Assistance Program shall be reinstated upon completion of the necessary enrollment forms and execution of a new vendor agreement unless it is determined that such vendor has not corrected the deficiencies upon which the suspension was based. If the deficiencies have not been corrected, the vendor shall, after notice and hearing, be terminated. The notice in any termination action based on this Section shall notify the vendor of the deficiencies not corrected." 89 Ill. Adm. Code 140.19(a), (b), (d) (2013).

¶ 63    We note a significant discrepancy between the statutory provisions and the Department rules implementing them. While Rule 17 and the "not exceed one year" statutory provision both provide for a suspension not to exceed one year, Rule 17 does not provide for the Director requiring correction of the underlying deficiencies, nor does it require reinstatement unless the vendor failed

to correct the underlying deficiencies. While Rule 19 and the "at least one year" provision both provide for suspensions of at least one year and both bar applying for reinstatement for a year after an unsuccessful application for reinstatement, the statutory paragraph provides that a suspended vendor "*may* be deemed eligible by the Director providing that such vendor meets the requirements for eligibility" (emphasis added) (305 ILCS 5/12-4.25(D) (West 2018)), while Rule 19(d) provides that a vendor shall be reinstated unless the vendor did not correct the underlying deficiencies. In short, Rule 17 does not directly parallel the "not exceed one year" statutory paragraph, nor does Rule 19 directly parallel the "at least one year" paragraph.

¶ 64    Here, plaintiff was suspended for one year on January 31, 2014, a term that notably falls under either the "not exceed one year" or "at least one year" statutory provisions. The Director's decision suspending him did not require him to correct the deficiencies underlying his suspension as provided in the "not exceed one year" paragraph. The recommended decision adopted in the Director's 2014 decision quoted Rule 17 and clearly applied Rule 17's requirements in concluding that suspension for a year was the appropriate sanction. However, as stated above, Rule 17 does not directly correspond to the "not exceed one year" paragraph. Under such circumstances, plaintiff's 2014 suspension for a year is ambiguous as to which statutory provision—which source of the Department's authority—governs. In the proceedings now under review, the Department and its Judge and Director effectively treated the 2014 suspension as an "at least one year" suspension, both in applying that paragraph's discretion in determining a suspended vendor's eligibility and in barring plaintiff from reapplying for reinstatement for a year. In light of the aforesaid ambiguity, we cannot conclude that they exceeded their authority in doing so.

¶ 65                                B. Evidentiary Ruling

¶ 66    Plaintiff also contends that the Judge erroneously admitted as evidence in the Department hearing the exhibits generated by McClung. Specifically, because the claims described in the

exhibits came from vendors rather than being generated by the Department, the records in the exhibits were not Department records. Plaintiff also argues that the Department rule on admitting Department computerized records into hearing evidence is unfair, as it elevates Department records over other records and the rules applicable to civil cases in the courts should apply.

¶ 67    Those rules are in the Illinois Rules of Evidence. In particular, the rule of evidence defining public records as an exception to hearsay is:

> "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, police accident reports and in criminal cases medical records and matters observed by police officers and other law enforcement personnel, or (C) in a civil case or against the State in a criminal case, factual findings from a legally authorized investigation, but not findings containing expressions of opinions or the drawing of conclusions, unless the opposing party shows that the sources of information or other circumstances indicate lack of trustworthiness." Ill. R. Evid. 803(8) (eff. Sep. 28, 2018).

¶ 68    The principles underlying Rule 803(8) are well established: the requirements for admitting public records as an exception to the hearsay rule are that the record was made in the ordinary course of business and was authorized by statute, rule, or regulation or required by the nature of the public office. *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 17. Documents reflecting regularly conducted governmental activities are made reliable by systematic

checking or regularity, actual experience of reliance upon them, or a duty to make an accurate record. *Id.* ¶ 13. Rule 803(8) makes no distinction between public records and computerized public records. *Id.* ¶ 18. "[E]vidence of public records may be authenticated by producing 'Evidence that: (A) a document was recorded *or filed* in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept.' " (Emphasis added.) *Id.* (quoting Fed. R. Evid. 901(b)(7)).

¶ 69    The Department rule on admitting its computerized records into evidence is "Unless proven otherwise, computer generated documents prepared by the Department shall be presumed to constitute an accurate reflection of the Department records as to the amount and type of payment made to the vendor as well as the basis for such payment." 89 Ill. Adm. Code 104.255 (1981).

¶ 70    Here, we conclude that the exhibits were not erroneously admitted. McClung's testimony laid an ample foundation, whether under the Department rule or Rule 803(8): the Department keeps claims data in a standard computer system in the ordinary course of its business overseeing the Medicaid program, including its obligation to review the payments it made to Medicaid providers for services rendered to Medicaid patients. McClung testified to producing the reports in the ordinary course of Department business using the Department's standard computer equipment and that each report accurately reflected the data in Department records.

¶ 71    As to the fact that vendors submitted the claims data, the Department claims records nonetheless "set[ ] forth *** the activities of the" Department as provided in Rule 803(8). The core activity of the Medicaid program, implemented in Illinois by the Department, is paying vendors to provide medical services or goods to Medicaid patients. In other words, taking in claims from Medicaid vendors and processing them is required by the nature of the Department. As McClung's testimony established, the Department receives claims and acts upon them by paying them, rejecting them, holding them, or otherwise processing them, and the Department records that

processing in the same claims records. The data received from vendors in claims—including which physician provided care or wrote a prescription—affects the Department's decision on a claim, which in turn may elicit more information from a vendor, which again affects the Department's decision, all of which is recorded in the claims records at issue. As the circuit court stated, "McClung's reports are not records from other entities that the Department merely stores. They are records of transactions the Department either agrees or refuses to complete."

¶ 72    Plaintiff's argument that Medicaid fraud exists goes to the weight of the evidence and not its admissibility. The Department routinely pays vendors based on vendor-submitted claims like the ones that commenced the claims records here, showing its reliance on claims in one of the most concrete manners possible. The fact that some claims vary from that routine and are rebutted does not render claims records generally untrustworthy.

¶ 73    Finally, we do not find the Department rule to be unfair, as both it and Rule 803(8) expressly create a rebuttable presumption that public records are trustworthy and admissible. Plaintiff's general challenges to the reliability of computers were reasonably rejected by the Judge as insufficient rebuttal, and we see no reason to conclude that they would not be similarly rejected under Rule 803(8).

¶ 74                                C. Director's Decision

¶ 75    Lastly, plaintiff contends that the Director's decision was erroneous because suspension of a physician as a Medicaid vendor does not prohibit him from treating patients who are on the Medicaid program and because plaintiff could not prevent his Medicaid patients from filling prescriptions.

¶ 76    Under the Public Aid Code, the "Department may deny, suspend, or terminate the eligibility of any person [or entity] to participate as a vendor of goods or services to recipients under [Medicaid], or may exclude any such person or entity from participation as such a vendor,

and may deny, suspend, or recover payments, if after reasonable notice and opportunity for a hearing the" Department makes certain findings, including that a "vendor is not complying with the Department's policy or rules and regulations." 305 ILCS 5/12-4.25(A)(a) (West 2018). The Department "may recover money improperly or erroneously paid, or overpayments, either by setoff, crediting against future billings or by requiring direct repayment to the" Department, and "may suspend or deny payment, in whole or in part, if such payment would be improper or erroneous or would otherwise result in overpayment." 305 ILCS 5/12-4.25(E) (West 2018). "Payments may be suspended, denied, or recovered from a vendor or alternate payee *** for services rendered in violation of the Illinois Department's provider notices, statutes, rules, and regulations ***." 305 ILCS 5/12-4.25(E)(1)(i) (West 2018).

¶ 77     A Department rule provides in relevant part,

"1) Upon being terminated, suspended, excluded or barred, and while the disability from Medical Assistance Program participation remains in effect, an entity:

A) Cannot be a vendor, ***;

B) Cannot be an employer of a vendor; a person with management responsibility for an employer of a vendor; an officer of an employer of a vendor; ***

C) Cannot order goods or services from a vendor when payment for such goods or services will be made in whole or in part by the Department; [or]

D) Cannot render goods or services as an employee of a vendor or as an independent contractor with a vendor for which payment will be made in whole or in part by the Department[.]

* * *

4) After the provision of written notice to the affected parties, the Department may deny payment for goods or services rendered or ordered by an entity that violates the provisions of subsection (a)(1)(A), (B), (C) or (D)." 89 Ill. Adm. Code 140.32(a)(1), (4) (2013).

¶ 78 Here, we conclude that the Director's decision was not clearly erroneous. Plaintiff acknowledges that a physician suspended from Medicaid participation cannot order for Medicaid patients goods and services for which payment will be rejected, in whole or part, by the Department, but plaintiff maintains that he should not be held responsible because he did not submit the claims for which he was held liable. However, nothing in section 12-4.25(A) or (E) limits the Department's recovery of payments from a vendor for services rendered in violation of statutes or Department rules to the vendor's own claims or payments. By issuing prescriptions and providing medical service for Medicaid patients during his suspension, he ordered goods and services for which he knew or should know that Medicaid claims would be presented. While he did not present claims, he continued to perform acts that would *cause* claims to be presented, and it would not require plaintiff to "predict the future" (as he argues) to know that he was causing Medicaid claims to be presented. As the circuit court stated, the "onus should be borne by Dr. Khan, who knew or certainly should have known he was not authorized to write prescriptions when he was not allowed to be a Medicaid provider. Unless the pharmacy was informed of such fact, there is a minuscule probability it would be privy to such information."

¶ 79 Plaintiff points to crossover patients, those covered by both Medicare and Medicaid, but it does not follow from the fact that such patients exist or that the Department excluded such patients from the hearing exhibits that plaintiff "was entitled to write prescriptions for these patients" as he claims without citing authority. Moreover, because crossover patients were excluded from the exhibits, plaintiff was not held liable for their claims.

¶ 80     Plaintiff raises the specter of leaving Medicaid patients unserved if he simply stopped serving them, and in the Department hearing he dismissed the idea of having to refer his patients to other physicians after his suspension. However, his suspension did not fall suddenly from a cloudless sky: his January 2014 suspension was recommended in May 2013. Moreover, he was providing care to Medicaid patients through the Organization, which would mitigate the difficulties of referral. Indeed, right around the time of his suspension and well after his suspension was recommended, plaintiff renewed his agreement with the Organization, through which he served Medicaid patients and to which he represented that he was a Medicaid provider in good standing with no investigations against him. While plaintiff testified that he kept providing care to Medicaid patients through the Organization because it did not tell him to stop, his false and misleading representations to the Organization would have kept it from doing so unless and until it learned of his suspension.

¶ 81     As to plaintiff's argument that he could not keep his patients from filling their prescriptions, the Director's decision did not require him to do so. The Director adopted the Judge's recommendation that the Department recover $5162.25 from plaintiff, which the Judge derived by narrowing the 217 prescriptions at issue to 126 prescriptions written after plaintiff's suspension. Plaintiff's renewal of his contract with the Organization and continuing provision of care to Medicaid patients through the Organization, and the fact that he was held liable only for prescriptions written after his suspension, belie his argument that he could not control the presentation of claims.

¶ 82                              IV. CONCLUSION

¶ 83     Accordingly, we affirm the decision of the Director of the Department of Healthcare and Family Services.

¶ 84     Affirmed.

**No. 1-19-1212**

| | |
|---|---|
| **Cite as:** | *Khan v. Department of Healthcare & Family Services*, 2020 IL App (1st) 191212 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-2921; the Hon. Moshe Jacobius, Judge, presiding. |
| **Attorneys for Appellant:** | Alan Rhine, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for appellees. |