# Illinois Official Reports

## Appellate Court

---

*Northbrook Bank & Trust Co. v. 300 Level, Inc.*,
**2015 IL App (1st) 142288**

---

Appellate Court
Caption

NORTHBROOK BANK AND TRUST COMPANY, an Illinois State-Chartered Bank, as Successor to First Chicago Bank and Trust, Successor to Labe Bank, Plaintiff-Appellee, v. 300 LEVEL, INC., Defendant-Appellant (2000-2006 W. Warren, LLC, an Illinois Limited Liability Company; Edward Gobbo; Hillside Lumber, Inc., an Illinois Corporation; GT Electric, Inc., an Illinois Corporation; Unknown Owners and Nonrecord Claimants, Defendants).

District & No.

First District, First Division
Docket No. 1-14-2288

Filed

June 15, 2015

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 11-CH-23097; the Hon. Alfred M. Swanson, Jr., Judge, presiding.

Judgment

Affirmed and remanded.

Counsel on
Appeal

Stephen D. Richek, of Chicago, for appellant.

Freeborn & Peters, of Chicago (Edward Filer and Adam C. Toosley, of counsel), for appellee.

| Panel | PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Cunningham and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    The issue presented in this commercial mortgage foreclosure case is whether a process server employed by an agency effectuated valid service on one of the defendants. We hold that the service was proper and accordingly affirm.

¶ 2                                                    BACKGROUND

¶ 3    In 2006, defendant 2000-2006 W. Warren, LLC (Warren), entered into a $4,575,000 construction loan agreement with plaintiff's predecessor in interest, Labe Bank. The loan was secured by a mortgage on an eponymous Warren Boulevard property in Chicago. The property contained 2 first-floor commercial units and 16 "to-be-sold" condominium units on higher floors. By 2011, after Warren had entered into a series of six different modification agreements with the bank, the loan became delinquent. First Chicago Bank & Trust (First Chicago), also a predecessor of plaintiff, filed this suit to foreclose on the mortgage and collect on the loan. First Chicago also sued a group of others including defendant Edward Gobbo, the loan guarantor; various lienholders; and defendant-appellant 300 Level, Inc. (300 Level), which was a tenant holding a lease to a first-floor commercial space that was to contain a bar.

¶ 4    300 Level's lease began on September 3, 2010, and provided for a 15-year term, with an option to renew for an additional 15 years. The rent varied over the term, but it averaged about $2,500 per month, so the lease was worth about $450,000 to the landlord. 300 Level recorded the lease in January 2011, five years after Warren signed the original mortgage and note, but a few months before the foreclosure lawsuit was filed. Accordingly, 300 Level's leasehold interest was significantly junior to that of the mortgagee. See 765 ILCS 5/30 (West 2010) (first to record a lien generally has priority). The lease was signed for the landlord by defendant Edward Gobbo as managing member of Warren, and for the tenant by Edward Vito Gobbo as president of 300 Level.[1]

¶ 5    On June 28, 2011, First Chicago filed a routine motion requesting that the court appoint Cadillac Investigations, Inc. (Cadillac), as a special process server. The court order granting the motion states, in relevant part:

> "A special process server, of lawful age, employed or retained by Cadillac Investigations, Inc., *** License No. 115-000924, an Illinois corporation, is appointed as special process server for all Defendants in this matter."

¶ 6    On August 18, 2011, Jack King, an employee of Cadillac, personally served a copy of the summons and complaint upon 300 Level's registered agent, Daniel Lauer. Northbrook moved for appointment of a receiver. The order appointing the receiver was eventually agreed to, as evidenced by signatures of an attorney for Northbrook Bank & Trust (Northbrook) and an

---

[1]The record does not clarify whether or not these two individuals are the same person.

attorney from the law firm of Daniel G. Lauer & Associates, P.C., for Warren. On the same day the court appointed the receiver, an attorney appeared for 300 Level and was granted leave to file an appearance. Attorney Timothy Fitzgerald filed a written appearance for 300 Level, erroneously labeled as an "additional" appearance, a week later. The complaint was later amended to substitute plaintiff Northbrook as successor to First Chicago.

¶ 7 The receiver quickly became suspicious regarding 300 Level's lease. On May 31, 2012, he filed a third report which, in part, requested authority to retain legal counsel to review the validity of the lease. The report stated that "requested documentation for build-out to begin has not been provided, liquor license has not been presented, no rent is being paid, and it has [*sic*] does not appear to be arm's length." The third report, and later reports, also stated that 300 Level's first-floor commercial space was vacant. When this report was presented in open court, the court entered an order which recited "the parties [are] present" and stated in part:

> "1. [Plaintiff's] motion for summary judgment is withdrawn as moot;
>
> 2. Based on the oral representations of counsel for 300 Level, Inc. regarding 300 Level Inc.'s intention to vacate the property and relinquish its possessory interests, the receiver's motion to appoint counsel is withdrawn;
>
> 3. 300 Level, Inc. shall vacate the property on or before 6/29/12 and all possessory interests under any leases or otherwise that 300 Level, Inc. may have or does have in the property at 2000-2006 W. Warren, Chicago, IL are hereby terminated, and the lease is terminated as well."

This order is not signed by Fitzgerald or any other attorney for 300 Level, and it does not identify the attorney who agreed to it on behalf of 300 Level. However, even in this court, 300 Level does not dispute that it agreed to this order. Accordingly, the order binds 300 Level and we will give the order its usual and ordinary effect even though 300 Level requests that all orders below be vacated pursuant to its motion to quash.

¶ 8 On December 12, 2013, the court entered a judgment of foreclosure and sale which, among other things, found that service on 300 Level was properly made. The order defaulted 300 Level for failure to file an answer and, perhaps for good measure, again terminated its interest in the property. On April 17, 2014, the court entered an order "on Defendant's Oral Motion to Substitute Counsel" which allowed attorney Robert Habib to withdraw for Warren (the record does not reveal what happened to Lauer, who signed the receiver order for Warren) and granted leave for Stephen Richek to substitute as attorney for Warren *instanter.*

¶ 9 On May 14, 2014, 300 Level appeared back on the scene for the first time in two years. Through its new law firm, Leading Legal, LLC, it filed a motion to quash service. The attorney from Leading Legal who signed the motion for 300 Level was Stephen Richek–the same attorney who had just been granted leave to appear for Warren. The motion claimed that service on it was improper because the order appointing the special process server appointed "employees of" Cadillac instead of Cadillac itself. After briefing, the court denied the motion to quash for two reasons: (1) the appointment clause in the process server order was proper; and (2) 300 Level had waived any objection to service by participating in the proceedings regarding the third receiver's report and the termination of its lease.

¶ 10 The property was sold as provided in the foreclosure order, but it sold for far less than the amount due under the loan. The successful bidder was an outside third party. On June 11, 2014, the court confirmed the sale and imposed an *in rem* deficiency judgment of $3,743,816.84.

Northbrook filed a motion to modify the deficiency to make it an *in personam* judgment. On July 10, 2014, upon consideration of motion to modify, the court entered an agreed order providing that the motion to modify the deficiency was withdrawn, and further stating that: (1) Warren "represents it has no assets other than property at issue in case with Plaintiff reserving rights if found out to be false [*sic*]"; (2) Warren withdrew its objection to funds held by the receiver, waived its right to appeal both the confirmation order and any issue regarding the funds held by the receiver; and (3) the parties agreed that the receiver could pay any funds remaining in his possession to Northbrook, except for $1,000, which was to be paid to Richek. The order concluded that "Plaintiff agrees that subject to terms herein, it will not pursue collection against 2000-2006 W. Warren, LLC." Gobbo discharged his guaranty debt in bankruptcy.

¶ 11 Warren's last attorney, Stephen Richek (who had previously switched clients) filed this appeal for the tenant, 300 Level.

¶ 12                                                      ANALYSIS

¶ 13 We first note that 300 Level's brief contains a table of contents to the record that does not comply with Supreme Court Rule 342(a)(2) (Ill. S. Ct. R. 342(a)(2) (eff. Jan. 1, 2005)) because it does not set forth the dates corresponding to any orders or pleadings. We remind counsel that supreme court rules pertaining to the content of briefs are mandatory and that failure to abide by them can result in dismissal of an appeal. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. The record for this case consists of 14 volumes. Including the dates for each order and pleading is very helpful to the court in understanding the chronology and locating relevant documents.

¶ 14 In this court, 300 Level argues that service on it was invalid and requests that we vacate all the underlying sale and foreclosure orders. Northbrook contends that 300 Level is debarred from attacking the foreclosure judgment because a third party purchased the property at the foreclosure sale and "the proceeds have long been disbursed and the title transferred." Normally, such a transfer does prevent a foreclosure defendant from obtaining further review of the case below. See 735 ILCS 5/15-1509(c) (West 2012) (barring claims of foreclosure defendants after the sale deed has been transferred). However, as we have explained, the absence of personal jurisdiction due to lack of valid service is different. A defendant can still attack service of process even if the property has been transferred to a third party. *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 22.

¶ 15 Northbrook also believes that we should affirm because the defendant waived its ability to object to service by filing an appearance and agreeing to an order in the trial court. In support, Northbrook states that "[c]ourts in Illinois going back to the 1970's have construed participation in a litigation of any sort *** to waive personal jurisdiction objections," and it cites five cases to that effect, all from 1991 or earlier. However, the rule of law on which Northbrook relies changed over 15 years ago–in 2000.

¶ 16 The current governing statute is more favorable to defendants. It does not provide that a defendant can waive service of process merely by filing an appearance or agreeing to orders. It requires more. See Keith H. Beyler, *The Death of Special Appearances*, 88 Ill. B.J. 30, 35 (2000). The statute states: "If the objecting party files a responsive pleading or a motion (other than a motion for an extension of time to answer or otherwise appear) prior to the filing of a motion [to quash or a motion to dismiss for lack of personal jurisdiction], that party waives all objections to the court's jurisdiction ***." 735 ILCS 5/2-301(a-5) (West 2012). In other

- 4 -

words, such a defendant waives his ability to bring a motion to quash service. The 2000 statutory amendment represents a sea change from the prior rule. It was enacted to "prevent the inadvertent waiver of an objection as was common under the prior statute." Jill Adams, *Survey of Illinois Law: Civil Procedure*, 24 S. Ill. U. L.J. 737, 737 (2000). Under the old statute, a defendant could subject himself to jurisdiction merely by filing a stipulation (*In re Marriage of Kelso*, 173 Ill. App. 3d 746 (1988)) or by sending a letter to the court (*Gutow v. Cooper*, 82 Ill. App. 3d 534 (1980)). Adams, *supra*, at 778. Under the current statute, filing a pleading is required, and 300 Level filed no motion or pleadings that would have subjected it to the jurisdiction of the court as provided by section 2-301(a-5).

¶ 17    Foreclosure defendants abused this permissive new rule to such an extent that, in 2011, the legislature amended the law again, establishing a strict 60-day deadline for them to file a motion to quash, running from the time they appeared or participated in any hearing. 735 ILCS 5/15-1505.6 (West 2012); see also *BAC Home Loans Servicing, LP v. Pieczonka*, 2015 IL App (1st) 133128, ¶ 10. The sponsor of the amendment, Senator Kirk Dillard, explained it was a "safeguard" and that it "eliminates the ability to bring [a motion to quash] late and stall these proceedings. *** [I]t is basically to limit the ability to file these motions to quash service that slow down these actions ***." 97th Ill. Gen. Assem., Senate Proceedings, May 17, 2011, at 155 (statements of Senator Dillard). The facts of this case vividly confirm Senator Dillard's analysis regarding delay and gamesmanship. See *infra* ¶ 29. However, there is a catch–the 60-day rule applies only to defendants in residential, not commercial, foreclosure cases, so it is of no value here.

¶ 18    That does not end our analysis, however. We find that, by entering into the agreed order, 300 Level created two separate, but interrelated, grounds which barred it from challenging service of process: equitable estoppel and relinquishment of its possessory interest in the property.

¶ 19    Our supreme court has explained the principle of equitable estoppel in the following terms:

> "The general rule is where A, by his or her statements and conduct, leads B to do something that B would not have done but for such statements and conduct, A will not be allowed to deny his or her words or acts to the damage of B. Equitable estoppel may be defined as the effect of A's conduct whereby A is barred from asserting rights that might otherwise have existed against B who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 24 (citing *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001)).

¶ 20    In exchange for the valuable consideration of eliminating its future $450,000 rent obligation, 300 Level essentially agreed to walk away from the playing field. It immediately relinquished all possessory interests "under any leases or otherwise" it had at the property, and agreed to terminate both those interests and its lease, effective immediately. It entered into this agreement not as a side deal worked out with a handshake, but under the supervision and administration of the court below, which memorialized it into a written judicial order. Northbrook and the receiver entered into the agreement in good faith with the understanding that 300 Level, which was not even occupying the property, would never be seen or heard from again. Had Northbrook known that 300 Level would furtively lie in wait for two years, while Northbrook was losing thousands of dollars in interest per day, and then ambush it with a surprise motion to quash service, Northbrook never would have entered into the agreed

possessory termination order. Similarly, the court might have insisted that 300 Level formally subject itself to the jurisdiction of the court before it accepted its representations and incorporated them into the order. Likewise, the receiver would have killed the deal and instead insisted that 300 Level perform its obligations and pay the rent due under the lease. Under these facts, the elements of equitable estoppel are amply met. A defendant can subject itself to jurisdiction of the court and waive service by private contract. *Eastern Savings Bank, FSB v. Flores*, 2012 IL App (1st) 112979, ¶ 10, *overruled in part on other grounds by BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 43. The court order was such a contract. We therefore hold that a defendant can validly waive service, even without filing pleadings, if it undertakes actions–involving not only the parties to the case, but the court itself–which establish the standard elements of equitable estoppel.

¶ 21    Also, by entering into the agreed lease termination order, 300 Level lost its standing to challenge the underlying orders. Standing in Illinois requires that a party suffer some injury in fact to a legally cognizable interest. That claimed injury, whether actual or threatened, must be: (1) distinct and palpable; (2) fairly traceable to the other party's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93 (1988). While standing is normally a doctrine applicable to plaintiffs who sue over an issue in which they do not have a sufficient legal interest, it applies here because 300 Level is the movant seeking relief regarding real property in which it has no cognizable interest.

¶ 22    As noted above, 300 Level recorded its lease. The main reason lenders name commercial tenants as defendants is to "clear title." If the tenancy began before the mortgage was executed, the lease might conceivably be senior to the mortgage and adversely affect the mortgagee's ability to sell the property free of any liens or encumbrances. The leasehold might survive the foreclosure. If, as here, the tenancy begins after the mortgage, naming the tenant simply provides it with notice and enables it to assert such defenses as it might have regarding its interest in the property. In some cases, a foreclosure defendant, usually a lienholder rather than a tenant, might be entitled to proceeds from the surplus of the sale and would become active in the case to secure those proceeds. A wise foreclosure plaintiff names all appropriate parties as defendants so it can obtain a court order terminating their interests in the property. See Thomas M. O'Shaughnessy, *Drafting, Filing, and Serving the Complaint*, in Illinois Mortgage Foreclosure Practice § 2.10 (Ill. Inst. for Cont. Legal Educ. 2010); see also 735 ILCS 5/15-1501(b) (West 2012) (foreclosure plaintiff may join as a party defendant "[a]ll persons having a possessory interest in the mortgaged real estate"). The termination of those interests adds value to the property and facilitates its eventual sale. Here, 300 Level apparently never occupied the first-floor commercial space. It also relinquished all of its interests in the property and terminated its lease *two years* before the property was ever sold at the foreclosure sale. Even in this court, 300 Level does not claim that its agreement to the order was unauthorized. Since 300 Level relinquished its interest in this property, it no longer has legal standing to challenge the judgments below.

¶ 23    Although we have found that 300 Level is barred from challenging service, we will review its challenge to the process server order on the merits. The issue is likely to recur and we will address it in the interest of judicial economy and to ensure a complete record.

¶ 24    "Service of process serves the dual purposes of protecting a defendant's right to due process by allowing proper notification and an opportunity to be heard ***." *Bank of New York*

*Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 12 (citing *In re Dar. C.*, 2011 IL 111083, ¶ 61). It vests personal jurisdiction in the court over the defendant. *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 31 (2006). Failure to effect service as required by law renders the court's orders void *ab initio*. *Dar. C.*, 2011 IL 111083, ¶ 60. Specifically, a foreclosure judgment entered without valid service of process is void. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986); *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 15. Our review of the denial of a motion to quash service where no evidentiary hearing was held is *de novo*. *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 10.

¶ 25        In this court, 300 Level argues that "[t]here is no Order appointing Jack King of Cadillac Investigations, Inc. to serve process." This argument rests on two premises. First, 300 Level contends that to be eligible to serve process, King–not merely any "special process server *** employed by Cadillac Investigations"–had to be personally named in the court order. Second, it argues that if the order named Cadillac itself as a process server, that would have given any of its employees process serving authority. However, since the order named "a Special Process Server *** employed or retained by Cadillac Investigations, Inc.," it did not grant King any authority. 300 Level does not dispute that King was an authorized employee of Cadillac when he effected service. 300 Level's argument is rather obtuse; Northbrook reads it as contending that the order must not reference "employees of" an agency, but merely the agency itself, and Northbrook has responded to it on that basis.

¶ 26        The sole authority for 300 Level's argument is not found in case law, but rather only in the statute authorizing appointment of special process servers, section 2-202(a) of the Code of Civil Procedure (735 ILCS 5/2-202(a) (West 2012)), which provides in part: "The court may, in its discretion upon motion, order service to be made by a private person over 18 years of age and not a party to the action." The next section of the statute addresses how that appointment operates when the court appoints a company, rather than an individual natural person. It provides:

> "Upon motion and in its discretion, the court may appoint as a special process server a private detective agency certified under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 [(225 ILCS 447/5-3 *et seq.* (West 2012))]. Under the appointment, any employee of the private detective agency who is registered under that Act may serve the process. The motion and the order of appointment must contain the number of the certificate issued to the private detective agency by the Department of Professional Regulation under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004." 735 ILCS 5/2-202(a-5) (West 2012).

¶ 27        We interpret these statutes under familiar rules explained by our supreme court:
> "The best indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. [Citation.] A court will not read statutory language in isolation but must consider it in the context of the statute as a whole." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 17.

¶ 28        Analyzed from this perspective, 300 Level's argument is simply casuistic hair-splitting. Reading the appointment order as a whole and its words in their proper context, it is clear that the court appointed Cadillac as an agency process server under the statute. That law specifically states that when a court enters an order appointing a private detective agency, "any

employee of the private detective agency who is registered under that Act may serve the process." The wording in the order naming "any employee of" Cadillac rather than simply "Cadillac" was probably the result of careful, precise drafting intended to track the statutory formula. The law anticipated the employees would serve process. The order clearly followed the intent and plain language of the statute, and so properly authorized King to serve process in this case.

¶ 29     We end by questioning how this appeal was possibly taken in good faith. The underlying issue regarding the process server's appointment is a textbook example of sophistry. The intertwined web of corporate officers and attorneys demonstrates that 300 Level is an alter ego of Warren. After Warren worked out a deal with Northbrook which basically excused it from paying a multimillion dollar debt which it owed, and which provided that Warren would not appeal, 300 Level then appealed the foreclosure order even though it had no interest in the property. Northbrook is still entitled to its attorney fees pursuant to the underlying loan agreements and we remand for that purpose. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 22. We also invite Northbrook to file a timely appropriate motion for sanctions in this court seeking any additional relief it may deem appropriate. See *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 101 (imposing $5,000 sanction on *pro se* foreclosure defendant who signed frivolous pleadings in addition to awarding attorney fees under the loan agreement).

¶ 30                                                    CONCLUSION
¶ 31     For these reasons, we affirm the judgment below and remand for determination of any additional attorney fees sought by Northbrook.

¶ 32     Affirmed and remanded.