2021 IL App (1st) 200521-U

THIRD DIVISION
March 17, 2021

No. 1-20-0521

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| EMPEROR ELDER, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 2019-CH-06560 |
| | ) | |
| ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, | ) | Honorable |
| | ) | Raymond W. Mitchell, |
| | ) | Judge Presiding |
| Defendant-Appellee | ) | |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: Noncustodial parent failed to show that court and administrative orders requiring him to pay child support had been vacated or that statute automatically relieved him of obligation to pay child support due to disability.

¶ 2    Emperor Elder appeals from a judgment of the circuit court affirming two final administrative decisions of the Director of the Illinois Department of Healthcare and Family Services (IDHFS or department) which require Elder to pay past-due support for his two children. Elder contends that an Illinois statute, an administrative order, and a circuit court order, have retroactively relieved him of his obligation to support his children, because he has disabilities and

an inability to maintain gainful employment.

¶ 3 On February 21, 2020, the circuit court affirmed the director's final administrative decisions. On March 12, 2020, Elder filed a notice of appeal, and the next day, March 13, 2020, he filed an amended notice of appeal, apparently because he had listed himself as both appellant and appellee on the initial one. *See* Ill. Sup. Ct. R. 303(b)(5) (indicating an amendment relates back to the time of filing of the notice of appeal). We have jurisdiction over Elder's appeal,  pursuant to section 3-112 of the Code of Civil Procedure (735 ILCS 5/3-112 (West 2018)), which makes final orders in administrative review cases reviewable by appeal as in other civil cases, and Illinois Supreme Court Rules 301 and 303, which govern appeals from final judgments of the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 4 Elder, who was born in 1985, had a child with Rhana Foreman in 2004 and a child with Unique Poston in 2011.

¶ 5 In January 2012, IDHFS issued an administrative order requiring Elder to pay $233.68 in child support for the child he had with Poston.

¶ 6 In June 2012, Elder and Poston married.

¶ 7 In 2013, IDHFS filed suit on Foreman's behalf seeking, among other things, child support. On October 4, 2013, the circuit court ordered Elder to pay $25 per week in temporary child support beginning October 18, 2013. The order further stated that the issues of "permanent support, medical [insurance] and retroactive support [were] *** entered and continued" until December 20, 2013. Elder made a $500 payment to the department during March 2014, and another $500 payment during May 2014, which, by our calculations brought Elder in compliance with his payment obligation through mid-July 2014. On December 5, 2014, IDHFS sought a contempt of

court finding against Elder due to his failure to comply with the temporary support order and the court issued a body attachment order directing the county sheriff to seize Elder and bring him before the court.

¶ 8     On May 8, 2015, the court entered an order containing five statements: 1) "RESPONDENT IS PURGED OF INDIRECT CIVIL CONTEMPT," 2) "THE TEMPORARY SUPPORT ORDER OF 10/04/2013 IS HEREBY MADE PERMANENT," 3) the issue of whether Elder should provide "MEDICAL [insurance] IS WITHDRAWN [by the department]," 4) the issue of whether Elder should provide "RETROACTIVE CHILD SUPPORT IS WITHDRAWN [by the department]," and 5) "THIS MATTER IS OFF CALL/FINAL ORDER." Elder now argues, without record support, that "On 5/8/2015, in response to new filings of Emperor Elder *** the arrears were made current to." We note, however, that 1) the order does not use the word "arrearage" or similar terminology, and 2) the record includes a "Support Calculation Worksheet" printed in November 2018 by Illinois' Child Support Services which indicates the last payment the agency processed from Elder for either of his children was in June 2014 and that in mid-May 2015, his arrearage of child support and interest was $1,134.75.

¶ 9     In 2016, Poston filed for divorce. On December 19, 2017, the circuit court entered a dissolution of marriage judgment which incorporated a settlement agreement and a "Judgment Allocation of Parental Responsibilities Incorporating Agreed Parenting Plan." The allocation judgment indicated Elder's youngest child, who was then six years old,  would be living with Poston outside of Illinois, there was a "guideline child support order" requiring Elder to pay $150 per month in child support, he was current with his support obligation for that child, and the $150 per month support order would remain in effect. The underlying $150 "guideline child support

order" was not attached to the allocation judgment. The settlement agreement provided that Elder would pay $150 per month in child support for as long as there was a duty to support his second child "pursuant to the uniform order for support entered in conjunction with this judgment."

¶ 10    In January 2018, Elder requested a modification through IDHFS. It appears from the record that this request concerned the January 2012 administrative order that required Elder to pay Poston $233.68 per month. The department reviewed Elder's ability to pay and in April 2018, the department issued an administrative order reducing his prospective support obligation to zero effective January 2018 because he had no income.

¶ 11    In September 2018, IDHFS notified Elder that he owed $6,360.86 in past-due child support and interest for his oldest child and $20,369.42 in past-due child support and interest for his youngest child. Elder responded that he was not liable for the roughly $27,000 in arrearage because since 2007, he had been disabled, without employment or income, or incarcerated. He requested administrative appeals. The current appeal stems from those proceedings and concerns Elder's liability for the stated arrearage for his two children.

¶ 12    An administrative law judge (ALJ) conducted a hearing in February 2019 regarding Elder's obligation for his oldest child. Elder first testified that he did not owe any arrearage because he read section 505.1 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/505.1 (West 2018)) to mean that unemployed or disabled noncustodial parents are not required to pay support. He stated that he had a disabling accident in 2007, had tendered evidence of "a medical diagnosis" of disability from "a Dr. Tinfang," had state identification indicating he had a "P2A" disability, and was awaiting determination of his application for social security disability benefits. He next argued that the portion of the May 8, 2015 order providing that retroactive

support was withdrawn meant that the circuit court was relieving him of the obligation to pay the arrearage. He also argued that the circuit court had purged its finding of indirect civil contempt because the court recognized that Elder was unable to pay support. Richard Falen, an IDHFS employee, testified about the distinction between retroactive child support and arrearage. Falen said that retroactive child support is support sought for the period before an enforcement action is filed. Retroactive child support in this case would be for the years prior to the filing of the support petition in 2013 and the birth of Elder's child in 2004. The question of Elder's obligation for retroactive support had been withdrawn in 2015. Falen further explained that retroactive child support is not the same as an arrearage. Support owed prospective to the filing of the action in 2013 if unpaid would have become arrearage or "delinquency." Falen noted that the order entered on May 8, 2015 did not address "arrearage," much less eliminate it. Falen also pointed out that the order required Elder to continue paying $25 per week in support, which would be prospective support. Falen concluded with IDHFS's position that Elder owed more than $6000 in arrearage for his first child and had no court order to the contrary. Elder replied that Falen's interpretation of the court's order was not law and that Elder was "the only one who can actually give any outside interpretation" because he was the only one in court on May 8, 2015.

¶ 13    The administrative law judge subsequently sent findings of fact to IDHFS's director. In April 2019, the director adopted those findings and affirmed the notices of past-due support. Regarding Elder's argument that under section 505.1 of the IMDMA he never had any obligation to pay support because he was disabled and unable to maintain gainful employment, the director first noted that the department lacked the authority to change or disregard the court order dated October 4, 2013 which directed Elder to pay $25 per week in temporary child support for his first

child; and the order dated May 8, 2015 which made that weekly amount Elder's permanent obligation. Furthermore, neither section 505.1 nor any other statute automatically relieves a noncustodial parent from paying support because of disability or unemployment, and section 505.1 actually indicates the circuit court may order an unemployed obligor to seek employment. Although Elder could ask the circuit court to modify his support obligation downward, there was no indication that he had requested that relief.

¶ 14    The director next rejected Elder's position that retroactive child support and arrearage are interchangeable concepts. As the IDHFS employee had explained in his testimony, the statement in the order indicating retroactive child support had been withdrawn had no bearing on Elder's arrearage. Elder's self-serving testimony about the meaning of the court's order was inconsistent with the established meaning of "retroactive child support."

¶ 15    The director also disagreed with Elder's contention that purging the finding of indirect civil contempt meant the court agreed Elder did not owe and continue to owe support. Instead, the purging indicated the court determined Elder's noncompliance with the court order was not willful and contumacious. And, rather than absolving Elder of liability, the court had made the $25 per week obligation permanent.

¶ 16    The director concluded that none of Elder's arguments had merit. The director affirmed the department's determination in 2018 that Elder owed in excess of $6000 in past-due support for his oldest child.

¶ 17    A separate appeal was conducted regarding the department's notice that Elder owed $20,369.42 in past-due child support and interest for his youngest child. One administrative law judge presided over a hearing in December 2018 and another administrative law judge presided

over a hearing in March 2019. When the hearing occurred in December 2018, the department's records indicated Elder's arrearage was $20,717.66, of which 7,177.87 was owed to the custodial parent and $13,539.79 was owed to IDHFS.

¶ 18    During the first hearing, Elder again testified that his interpretation of Section 505 of the IMDMA was that someone who is disabled or incarcerated is not required to pay even a minimum amount of support. Elder again said that he had submitted evidence of a disabling condition and added that he had been incarcerated at various points between 2012 and 2018. He stated that he had requested downward modification "throughout the entire time *** that this Department has been contacting me" and from "every judge that I've seen." Elder testified that his interpretation of the language in the 2017 allocation judgment providing that he was current with his guideline support obligation was that the circuit court had eliminated his arrearage. He stated that the circuit court told him that he needed to quickly seek modification of his support amount from IDHFS, and that he did so, resulting in the April 2018 administrative order reducing the amount to zero. Department employee Falen (who also testified in the older child's case) responded that modifications of both circuit court support orders and administrative support orders apply only prospectively, so a modification in either forum could not eliminate an arrearage.

¶ 19    The administrative hearing was continued for three months so Elder could locate and submit a copy of the circuit court's guideline support order from the dissolution of marriage case, as Elder said the order would substantiate his appeal. Elder then submitted two documents. He tendered the second page of the circuit court order entered on November 15, 2017, in which Poston agreed to "waive all arrears existing as of 11/15/17 pursuant to [an] existing child support order," and further agreed to accept "the reduced amount of $150 for monthly child support effective

11/15/17." Elder also submitted a circuit court order dated January 25, 2019 reserving the issues of child support and the effect of the department's April 2018 administrative order reducing Elder's prospective support amount to zero.

¶ 20    When the administrative hearing resumed in March 2019, no new arguments were offered. The administrative law judge held the record open for 14 additional days so Elder could submit any further relevant documents. Elder did not tender any other documents.

¶ 21    The hearing office sent findings of fact to the department's director, and in April 2019, the director adopted those findings of fact and affirmed the notices of past-due support with regard to Elder's youngest child. Consistent with the director's analysis in the earlier case, she rejected the contention that section 505 or 505.01 automatically relieve a noncustodial parent from paying support because of disability, unemployment, or incarceration. Also consistent with her prior analysis, the director noted that while IDHFS had modified Elder's support obligation downward to zero in its April 2018 administrative order, that modification applied only prospectively and did not eliminate his arrearage.

¶ 22    The director next rejected Elder's argument that orders issued in his dissolution of marriage case eliminated his arrearage. She stated that neither the second page of the November 15, 2017 order nor any of the December 19, 2017 orders purported to eliminate his arrearage. The director reasoned that the language in the November 15, 2017 order regarding Poston waiving arrears was referring to the arrearage that accrued based on the circuit court's guideline support order of $150.00 per month, not the arrearage that accrued based on the department's 2012 administrative order that required Elder to pay $233.68 per month. Similarly, she reasoned that the language contained in the December 19, 2017 allocation judgment stating that Elder was current in his

support referred to the support owed pursuant to the guideline support order, not the department's 2012 administrative order, and did not purport to eliminate the arrearage that accrued based on the administrative order.

¶ 23    Elder filed in the circuit court for administrative review of the director's determinations. After he was unsuccessful in the circuit court, Elder filed for additional review by this appellate court.

¶ 24    Although not argued by the department, Elder's brief lacks any citation to the record on appeal. The absence of record citation makes it impossible to follow the two-page statement of facts that he compiled (unpaginated pages 3 and 4 of Elder's brief) or the additional facts that appear throughout the five-page "Argument in Theory" section of his brief (unpaginated pages 5 through 9 of his brief). We also point out that some statements which he labels as "Undisputed Facts" are at the heart of his disagreement with the administrative agency, including, "On 5/18/15, in response to [his] new filings ***, the case [concerning Elder's obligation for his first child] was taken off court call and the arrears were made current to." A litigant acting *pro se* in the appellate court must follow the same rules as a litigant represented by a lawyer. *In re Marriage of Winters*, 160 Ill. App. 3d 277, 281 (1987); *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 528 (2001). Rule 341(h) requires an opening brief to contain various parts which inform this court of the nature and scope of the appeal and the relief sought, such as a nonargumentative statement of the facts which are necessary to understand the appeal and appropriate reference to the pages of the record. Ill. S. Ct. R. 341(h) (eff. May 1, 2018). Given Elder's failure to follow the rules regarding the contents of an appellant's brief, we could find that he has waived our consideration of some or all of his arguments. *Domenella v. Domenella*, 159 Ill. App. 3d 862, 868 (1987) (compliance is mandatory

and failure to comply can result in waiver of the court's review of an issue); *Northbrook Bank & Trust Co. v. 300 Level, Inc.,* 2015 IL App (1st) 142288, ¶ 13 (failure to follow the rules can result in dismissal of an appeal). It appears this is Elder's first experience with the rules of appellate practice, and the department has provided a thorough statement of facts which is supported by record citation. Accordingly, instead of finding that Elder has waived appellate review, we will rely on the department's statement of facts, disregard the unsupported statements in Elder's brief, and address the legal arguments appearing at the latter section of his brief (pages 9 through 12).

¶ 26    Elder contends he has "never [been able] to pay any child support amount as he is disabled" and that the director's decisions "place[s] an insurmountable debt on an individual with no income." He contends the decisions are in error because section of 505(3.3b) of the IMDMA indicates that for parents "with no gross income, who receive only means-tested assistance, or who cannot work due to a medically proven disability, incarceration, or institutionalization, there is a rebuttable presumption that the $40 per month minimum support order is inapplicable and a zero dollar order shall be entered." 750 ILCS 5/505(3.3b) (West 2018). He argues, "In this case, a request for modification has been put in since 2012 with no consideration or response." He contradicts that argument, however, by also arguing that modifications occurred when "Judge Regina S. purged [him] of all arrears and ordered a 0$ support order in her final order of 2019 according to the [C]ook [C]ounty electronic docket, case 16D2976" and that the "administrative order took the same position a year earlier in January of 2018." Elder asks this court to vacate the director's decisions, vacate all past-due child support, suspend child support and "related financial obligations" as of the onset of his disability in November 2007, and require that any subsequent

financial obligation "be determined pursuant to §505 of the IMDMA upon appropriate Petition and Notice."

¶ 27 Because this appeal does not concern a contempt finding or the sufficiency of any pleading, we are disregarding Elder's statements about contempt and compliance with the standards of federal pleadings (on unpaginated pages 10 and 11 of his brief). For instance, "Furthermore, the purging provision in a civil contempt sanction for nonpayment must be based upon the contemnor's ability to pay. *In re Marriage of Ramos* (1984), 126 Ill. App. 3d 391, 466 N.E.2d 1016." An example of his statements regarding pleadings is, " 'The assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.' *Elmore v. McCammon* (1986)[,] 640 F. Supp 905."

¶ 28 We review the decision of the department rather than the decision of the circuit court. *Khan v. Department of Healthcare & Family Services*, 2016 IL App (1st) 143908, ¶ 8. The issue of whether Elder owed past-due support and interest for his two children is a mixed question of law and fact because it involves the application of the relevant statutory provisions to Elder's particular facts. See *Senno v. Department of Healthcare & Family Services*, 2015 IL App (1st) 132837, ¶ 34. We address mixed questions under the clearly erroneous standard (*Khan*, 2016 IL App (1st) 143908, ¶ 8), under which, we will reverse only when we come to the definite and firm conviction that a mistake has been committed. *Hanks v. Department of Healthcare & Family Services*, 2015 IL App (1st) 132847, ¶ 19. To the extent that pure issues of law that arise within that overall analysis, such as whether the department has the authority to modify or vacate a circuit court order, whether modifications of support can eliminate arrearages or are solely prospective, and how to interpret the language contained in circuit court orders and department administrative orders, we

address them *de novo*. See *Khan*, 2016 IL App (1st) 143908, ¶ 8; *CBS Outdoor, Inc. v. Department of Transportation,* 2012 IL App (1st) 111387, ¶ 26 (where there is "a dispute as to whether the governing legal provisions were interpreted correctly by an administrative agency, the case presents a purely legal question for which our review is *de novo*.")

¶ 29    We first address Elder's support obligation for his oldest child. The record shows that the circuit court ordered Elder to pay temporary child support in the amount of $25 per week beginning October 18, 2013 and then changed that payment obligation to a permanent support order as of May 8, 2015. The director's affirmance of past-due support stems from Elder's failure to comply with those orders.

¶ 30    We are not persuaded by Elder's contention that the director erred when she affirmed the department's notices of past-due support for Elder's oldest child. We reject Elder's argument primarily because the department lacks the authority to disregard a court order and Elder has not cited any court order relieving him of the $25 weekly obligation. See *CAT Express, Inc. v. Muriel*, 2019 IL App (1st) 181851, ¶ 15 (administrative agencies are created by statute, have no general or common powers, gain authority only by statute, and can only take actions authorized by statute). Furthermore, the department is specifically prohibited by statute from reviewing court orders regarding support. 305 ILCS 5/10-10 (West 2018) (determination issued by circuit court regarding child support is not administratively reviewable by the department). Elder's debt is attributable to the circuit court orders in October 2013 and May 2015, not to any error in judgment by the department which gives effect to those court orders. The $25 weekly obligation remains in effect as there is no indication that Elder appealed from the May 2015 order. If Elder wants the circuit court to prospectively modify the $25 per week amount, he needs to file a motion for modification

in the circuit court and obtain a ruling on that motion. See generally 750 ILCS 5/510 (2018); *In re Marriage of Schomburg & Osland*, 2016 IL App (3d) 160420, ¶ 22 (in order to modify a child support obligation, the parent has to petition the court and obtain judicial approval of the modification). If he can persuade the circuit court to reduce the $25 to a smaller amount or to zero, that would either slow or stop the arrearage that is still steadily increasing.

¶ 31    Furthermore, there is no order which relieved Elder of the arrearage. Even if Elder asked or asks the circuit court to strike the arrearage, the circuit court lacks the legal authority to grant him that relief. As of May 1, 1987, any child support order entered by the court is considered to be a series of judgments against the obligor, with each judgment to be in the amount of each payment or installment of support and each judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. *Department of Healthcare & Family Services* ex rel. *Wiszowaty v. Wiszowaty*, 239 Ill. 2d 483, 486 (2011) (quoting Pub. Act 85-2 (eff. May 1, 1987), which is currently codified as 750 ILCS 5/505(d) (West 2018)); 305 ILCS 5/10-10 (West 2018); Marilyn R. Smith, *Child Support at Home and Abroad: Road to the Hague,* 43 Fam. L.Q. 37, 46 (Spring 2009) (noting that prior to federal legislation, interstate enforcement of past-due child support payments was difficult because a proceeding was necessary to reduce the arrearage to an actual money judgment that could be enforced in other states). Accordingly, the amount of past-due support cannot be modified by the circuit court because any past-due amounts that accrue before Elder seeks modification constitute vested and unmodifiable rights of the custodial parent. *In re Marriage of Schomburg & Osland*, 2016 IL App (3d) 160420, ¶ 21; *In re Marriage of Burns & Stewart*, 357 Ill. App. 3d 468, 470 (2005) (affirming trial court's denial of a motion to vacate child support owed).

¶ 32    Elder argued in the administrative proceedings that section 505.1 of the IMDMA (750 ILCS 5/505.1 (West 2018)) automatically exempts obligors who are disabled or unemployed from paying child support or accruing an arrearage for past-due support. However, section 505.1 does not address that issue; it instead authorizes the court to order an unemployed obligor to participate in job search, training, or work programs. 750 ILCS 5/505.1 (West 2018). Elder now argues that section 505(3.3b) creates such an exemption. There is language in section 505(3.3b) providing that there is a rebuttable presumption that the $40 per month minimum support order is inapplicable and a zero dollar order shall be entered for an obligor who has no gross income, who receives only means-tested assistance, or who cannot work due to a medically proven disability, incarceration, or institutionalization. 750 ILCS 5/505(a)(3.3b) (2018). But this language was added in 2017, see Pub. Act 99-764, § 5 (eff. July 1, 2017), so the circuit court would not have considered it in entering the October 2013 $25 per week temporary support order or the May 2015 $25 per week permanent support order. If Elder believes that he is entitled to this rebuttable presumption prospectively, he should make this argument in the circuit court in a motion for modification.

¶ 33    Elder contends that the language in the circuit court's May 2015 order that stated that retroactive support was withdrawn eliminated any arrearage that he owed as of that date. However, retroactive child support and arrearages of past-due prospective support are different concepts. See *Department of Public Aid v. Smith*, 212 Ill. 2d 389, 391 (2004) (indicating retroactive child support reaches back to the date of the child's birth); *Janssen by Janssen v. Turner*, 292 Ill. App. 3d 219, 221 (1997) (indicating retroactive child support reaches back to child's birth or to issuance of summons to noncustodial parent). In addition, it seems highly unlikely that the court would have intended to eliminate an arrearage when the court  lacked the legal authority to do so because the

custodial parent had a vested and unmodifiable right to the series of judgments that made up the arrearage. See *Marriage of Schomburg*, 2016 IL App (3d) 160420, ¶ 21; *Marriage of Burns*, 357 Ill. App. 3d at 470. Finally, even under Elder's erroneous interpretation of the term "withdrawn" in the May 2015 court order, the arrearage that accrued after May 2015, when the $25 weekly obligation was made permanent, would not have been affected.

¶ 34    For all these reasons, we reject Elder's arguments regarding the support he owes for his oldest child, and we affirm the director's decision that in turn affirmed the notices of past-due support.

¶ 35    We next address whether the director erred in affirming the notices of past-due support for Elder's youngest child. The department issued an administrative order in January 2012 requiring Elder to pay $233.68 per month in child support. In April 2018, the department issued a second administrative order reducing his prospective support obligation to zero effective January 2018 because he had no income. The arrearage in this part of the appeal arose from Elder's failure to pay the department-ordered amounts between 2012 and 2018, when his prospective support amount was reduced.

¶ 36    Although Elder is no longer required to pay prospective support for his youngest child, he still is liable to pay his arrearage. The principles discussed above regarding court orders have corollaries about administrative orders. The effect of an obligor's ongoing support obligation that is imposed by a department administrative order is the same as one imposed by a court. Pursuant to statute, each payment owed was part of a series of administrative "judgments" in favor of the custodial parent, Poston, and she has a vested and unmodifiable right to receive the past-due amounts. *See* 305 ILCS 5/10-11 (2018) ("Any new or existing support order entered by the Illinois

Department under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced.")

¶ 37    For the same reasons discussed above with regard to the oldest child,  Elder's contention that under the IMDMA he was automatically exempt from paying support for his youngest child because of his disabilities and unemployment is unpersuasive.

¶ 38    Elder argues that the language on the second page of the November 15, 2017 order issued in his divorce case in which Poston purported to waive "all arrears" existing as of that date "pursuant to existing child support order" eliminated the arrearage he owed due to the Department's January 2012 administrative order. It does not appear that the circuit court was referring to (or necessarily was even aware of) the arrearage that arose from the administrative order. The court refers to the "existing child support order" (in the singular), which most likely refers to the court's own guideline support order. In addition, it seems unlikely that the circuit court would have intended to eliminate a support arrearage when, as discussed above, it lacked the legal authority to do so because Poston had a vested and unmodifiable right to each payment. Finally, Poston's waiver of arrears would have no effect. The majority of the arrearage in the youngest child's case ($13,465.77) is owed to the department and Poston has no authority to waive a debt owed to the department. In addition, because the support is for the benefit of the child, Poston may not properly waive the child's portion either. See *In re Marriage of Deem*, 328 Ill.

App. 3d 453, 458 (2002) (child support is obligation owed for benefit of child, and parents may not by agreement deprive child of that support); *In re Marriage of Florence*, 260 Ill. App. 3d 116, 121 (1994) (same).

¶ 39 Elder contended in the administrative action that language in the December 19, 2017 allocation judgment stating that he was current in his support obligation also constituted an elimination of his arrearage. But again, it appears that the circuit court was referring to its own support order of $150 per month, and it is unclear whether it was even aware of the department's 2012 administrative order. Further, noting that a noncustodial parent is "current" in support is not an express elimination of an arrearage, and it seems unlikely that it was intended to be such where, as discussed above, the court lacked the legal authority to eliminate arrearage.

¶ 40 Finally, while the department's April 2018 administrative order reduced Elder's support obligation prospectively to zero effective January 2018, it is unclear whether the circuit court ever reduced the $150 per month support order that it most recently issued in December 2017. So if Elder has not sought and received a modification of that support amount, he may have a further arrearage increasing based on that order.

¶ 41 For all these reasons, we find Elder's contentions unpersuasive. We affirm the circuit court's decision affirming the director's decision that in turn affirmed the notices of past-due support in the youngest child's case.

¶ 42 Affirmed.